## First Nat. Bank of Gulfport *v.* Rau.[*]

(Division B.    May 16, 1927.)

[112 So. 688.    No. 26408.]

1. BILLS AND NOTES.  *Principal and surety.  Law releasing liability
   of surety or accommodation indorser on failure of creditor to
   commence proceedings after notice held not repealed (Heming-
   way's Code, section 2907; Negotiable Instruments Act).*

   Hemingway's Code, section 2907 (Code 1906, section 3731), au-
   thorizing discharge of surety or accommodation indorser on
   creditor's failure to commence proceedings after giving him no-
   tice in writing, *held* not repealed by the Negotiable Instruments
   Act (Hemingway's Code, sections 2579-2774), in that it does not
   conflict with the act, but, on the contrary, improves instead of
   marring it as laying down a just and wholesome principle
   governing rights and obligations between accommodation in·
   dorsers and sureties on one hand and creditors on the other.

2. BILLS AND NOTES.  *Stipulation /over accommodation indorser's
   signature held not waiver of right to discharge from liability on
   creditor's failure to commence proceedings after notice (Hem-
   ingway's Code, section 2907, section 2698, subsec. 6).*

   Stipulation over signature of accommodation indorser, whereby
   he waived protest and agreed that time of payment might be ex-
   tended without notice, *held* not waiver of right to rely on Hem-
   ingway's Code, section 2907 (Code 1906, section 3731), discharg-
   ing him from ·liability on creditors' failure to commence pro-
   ceedings after notice in· writing, where payee did not make
   a contract with maker extending time of payment, but simply
   neglected to bring action on note, in that such neglect constituted
   a mere indulgence of maker on part of payee, based on no bind-
   ing agreement for extension, within meaning of section 2698,
   subsec. 6.

3. BILLS AND NOTES. *"Contract extending time of payment of note"*
   *must be for definite period and valuable consideration.*

   As respects discharge of accommodation indorser, to constitute
   a valid binding contract for extending time of payment of a note,
   extension of time must be for a definite period, and valuable
   consideration therefor is essential, and mere granting of in-
   dulgence to maker is not an extension of time of payment.

*Corpus Juris-Cyc. References: Bills and Notes, 8CJ, p. 275, n. 92; p.
278, n. 26, 27, 29.

APPEAL from circuit court of Harrison county.
Hon. W. A. WHITE, Judge.

Action by the First National Bank of Gulfport against
the Long Beach Canning Company, W. Estopinal, and
I. B. Rau. Judgment for plaintiff against the first two
named defendants and in favor of the last-named de-
fendant, and plaintiff appeals. Affirmed.

*Gardner & Brown,* for appellant.

I. Under our demurrer to appellee's special plea the
following proposition was argued: The negotiable in-
strument law repealed section 3731, Code of 1906, being
in conflict therewith. So far as our research discloses,
the question raised by us has not been passed on by
this court; but *Bank of Conway v. Stary* (N. D.), 37 A.
L. R. 1186, is identical in point and similar in fact. See,
also, *Nat'l City Bank v. Nat'l Bank,* 132 N. E. 832, 22
A. L. R. 1155 (Ill.) ; *First Nat'l Bank of Shawno v. Mil-
ler* (Wis.), 120 N. W. —, 131 A. S. R. 1042; *Taylor v.
Ross* (Miss.), 92 So. 638.

In urging our contention that section 3731 of the
Code of 1906, under which appellee defends, has been
repealed by the negotiable instrument law, we are not
unmindful of the decisions of this court holding that cer-
tain other of our laws are not repealed by the later act.
But those decisions—which will no doubt be cited by
counsel for appellee—clearly show that the cases so de-
cided do not involve a construction of provisions so in-

consistent and hopelessly in conflict as those now here for consideration by the court.

II.    The negotiable instrument law exclusively fixes the *status* of an endorser, defines his liability, and prescribes exclusively the means by which an endorser can be released.  See *Dunnington* v. *Bank of Crewe,* 131 S. E. 226; *Chotpon* v. *Hall,* 51 Miss. 482; sections 29, 63, 64, 119, 120, N. I. L.

III.    The waiver as to protest, non-payment and consent to extension of time for payment, without notice, as contained in the note above the signature of the endorsers constitutes an independent contract between the endorser and the creditor, and estopped the endorser from requiring the creditor to accelerate action upon the note, or to proceed against the principal at the instance or upon the demand of the endorser.   Sections 110 and 111, N. I. L.; *Little* v. *People's Bank of Mobile* (Ala.), 96 So. 763, 765; *Bank of Conway* v. *Stary,* 37 A. L. R. 1195; *Owensboro Sav. B. & T. Co.* v. *Haynes* (Ky.), 136 S. W. 1004; *Archenhold Co.* v. *Smith* (Tex.), 218 S. W. 808; *Armour Fert. Works* v. *Bond* (Ga.), 77 S. E. 22.

So far as we are able to find the courts are unanimous in holding that a party is conclusively bound by the stipulations of a waiver to which he has expressly agreed.   As appellee by his express agreement consented that "time for payment may be extended," we submit that it is repugnant not only to the fundamental law of contracts, but to reason and good conscience as well, to say that he can afterwards and without appellant's consent repudiate this agreement by requiring the creditor to sue at his (the endorser's demand.

IV.    We come now to the last proposition argued under appellant's demurrer:   Independently of the provisions of the negotiable instrument law and long prior to its adoption in Mississippi, the decisions of this court

have established the *status* and liability of an accommo-
daton endorser, before delivery, as that of a co-maker.
*Clopton* v. *Hall,* 51 Miss. 482; *Polkinghorne* v. *Hendricks,*
61 Miss. 371; *Pearl* v. *Cortright,* 81 Miss. 300; *Lindsay*
v. *Parrott,* 108 Miss. 161.

Decisions to the same effect by this court and the
courts of practically all other states could be cited in-
definitely, establishing the universal rule that the lia-
bility of an accommodation endorser before delivery is
that of a co-maker or original promissor. All of the
decisions last cited above ante-date the adoption of
the negotiable instrument law in 1916; and as these de-
cisions show, irrespective of the provisions of the uni-
form act, the rule has long since been established in Mis-
sissippi that the liability of an accommodation endorser,
before delivery, is that of an *original promissor.* The
negotiable instrument law, which expressly prescribes
the liabilities of such endorsers merely reiterates and
puts into cognate form that which has all along been the
recognized law of the state.

Therefore, we say that section 3731, Code of 1906,
under which appellee defends, is in hopeless conflict
with both the negotiable instruments law and that which
has theretofore—since *Jennings* v. *Thomas,* 5 S. & M.
630—been recognized law in this state.

*C. R. Haydon* and *John L. Heiss,* for appellee.

I. The first question of law raised by the appellant
is that the appellee by endorsing said notes before de-
livery was a co-maker and not an accommodation en-
dorser. While it is true that our courts, prior to the
adoption of the negotiable instruments law, have held
that an accommodation endorser's signature placed on a
note, which necessarily must be done before delivery,
makes him a co-maker for certain purposes; namely,
those of protest and notice of non-payment, were not
necessary to render him liable to the payee, this in no

sense holds that he is not also an accommodation endorser, but defines the liability of such endorser under certain circumstances and for certain purposes. Such an endorser is, therefore, the accommodation endorser for whose benefit section 3731, Code of 1906, was adopted. See 3 R. C. L., page 1132, section 347.

II.   The next contention of the appellant is that the negotiable instruments law repeals by implication section 3731, Code of 1906.  The appellant admits that there is no law expressly repealing but contends that this section of the Code is repealed by implication because the negotiable instruments law supercedes all prior existing laws on negotiable instruments, and particularly section 120 of said law which provides how persons secondarily liable may be discharged.

The courts do not favor repeals by implication and unless a later statute is clearly in conflict with a prior law the courts will not hold that such law is repealed by implication. *Branton* v. *Crittendon,* 111 So. 150.  This is not a new question before the court as it was decided by this court in *Graham* v. *Pepple,* 97 So. 180.

III.   The third and final contention of appellant is that the appellee by waiving protest of the note and consenting that time of payment may be extended without notice, also as a matter of law waived his rights under section 3731, Code of 1906 (section 2907, Hemingway's Code).   Our reply to this contention is that there is no question here of any extension of time being sought or granted.

Appellant relies on *Bank of Conway* v. *Stary* (N. D.), 37 A. L. R. 1186, as supporting his contention, but we submit that this case is not in point for the reason that the bank in that case had for a valuable consideration granted the maker of the note an extension and, therefore, the waiver consenting to an extension without notice was applicable.  In the instant case no extension was

granted, but the holder merely failed to sue after notice duly served.

This case should be affirmed.

*Gardner & Brown,* in reply, for appellant.

It would be idle to say that section 3731, Code of 1906, does not confer upon an accommodation endorser the right to compel a creditor to sue at the endorser's demand. But we do say that in so doing the statute does great violence to basic principles, as just above quoted, by injecting the element of suretyship into contracts of endorsement. However that may be, the negotiable instrument law observes the important distinction by clearly providing that "a person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor is deemed to be an endorser;" and after expressly prescribing the liabilities and rights of an endorser, which provisions do not attempt to confer the right of a surety, as given in section 3731, Code of 1906, leaves the subject without emasculation or confusion. Wherefore, the question here before the court presents this anomoly: If the negotiable instruments law be deemed to be *the* law relating to commercial paper, and to "furnish in itself the sole and certain guide for the determination of all questions covered thereby" (*Nat'l City Bank* v. *Nat'l Bank,* 132 N. E. 832), then an endorser is an *endorser*—not a surety. But if it be held that section 3731, Code of 1906, is still in force, then that endorser is not an *endorser,* but a surety.

We submit that the provisions of the two statutes are in irreconcilable conflict, both in language and in principle. One or the other must fail, for both cannot prevail. As to repeals by implication, see *So. R. R. Co.* v. *Jackson,* 38 Miss. 334; *Pons* v. *State,* 49 Miss. 1; *Myers* v. *Marshall County,* 55 Miss. 344; *Gibbons* v. *Brittenum,* 56 Miss. 232; *Ex parte McInnis,* 54 So. 250; *Ascher & Baxter* v. *Moyse,* 57 So. 300.

The judgment of the lower court should be reversed.

Argued orally by *Chas S. Brown,* for appellant.

Anderson, J., delivered the opinion of the court.

Appellant, First National Bank of Gulfport, brought this action in the circuit court of Harrison county, on a promissory note for one thousand three hundred seventy-five dollars against the Long Beach Canning Company, W. Estopinal, and appellee I. B. Rau. No defense was made by the canning company and Estopinal, and judgment was therefore taken against them for the amount sued for. Appellee Rau denied liability, and defended against appellant's right to recover as against him. There was a jury, verdict, and judgment for appellee. From that judgment appellant prosecutes this appeal.

The questions for decision arise out of undisputed facts. The Long Beach Canning Company borrowed from appellant the sum of one thousand three hundred seventy-five dollars, for the payment of which it executed its promissory note, payable to appellant, or bearer, with appellee as an accommodation indorser. The loan was made upon the indorsement of appellee, which indorsement took place before the delivery of the note to the appellant. Appellee indorsed the note upon its back. Above is signature there was printed a waiver as follows:

"We, the indorsers of this note, do hereby, each and severally, waive protest thereof, and agree that the time of payment may be extended without notice."

There was printed in the face of the note the following:

"I, or either of us, hereby waiving presentment for payment, notice of nonpayment, protest, and failure or want of consideration."

Appellee's defense was based on section 3731, Code of 1906 (section 2907, Hemingway's Code), which is as follows:

"Any person bound as surety or accommodation indorser for another, may, at any time after the debt has become due or liability been incurred, give notice in writing to the creditor to commence and prosecute legal proceedings against the principal debtor, if living and resident within this state, for the recovery of the debt; and if the creditor fail to commence legal proceedings by the next term of the court in which the same shall be instituted, to be held after the expiration of thirty days from the giving of the notice, and to prosecute the same to effect, the surety who shall have given the notice shall be discharged from liability. It shall not be lawful to plead or to give in evidence under this section a notice not in writing, and any act of the creditor shall not be a waiver of notice in writing as herein required."

After the note had been some time overdue, appellee gave the appellant written notice under the above statute to commence and prosecute action upon the note against the principal debtor, Long Beach Canning Company. Upon receipt of the written notice, appellant failed to commence legal proceedings by the next term of the circuit court of Harrison county, held after the expiration of thirty days from the giving of such notice. Appellee contends that the failure of appellant to so institute and prosecute action against Long Beach Canning Company had the effect, under the statute, of discharging appellee from further liability in the note. While appellant contends that the Negotiable Instruments Act (Hemingway's Code, sections 2579 to 2774, inclusive, especially sections 29, 63, 64, 119, and 120, of the act (Hemingway's Code, sections 2607, 2641, 2642, 2697, and 2698), had the effect of repealing section 3731, Code of 1906 (Hemingway's Code, section 2907). Appellant's position is that those sections of the Negotiable Instruments Act contain a complete codification covering the liability of an accommodation indorser, and how such indorsers may be discharged from liability.

Section 29 of the Negotiable Instruments Act, being section 2607, Hemingway's Code, as contended by appellant, fixes the liability of an accommodation indorser. It defines what an accommodation indorser is, and provides that such an indorser shall be liable on the instrument to a holder for value, notwithstanding at the time of taking the instrument such holder knew him to be only an accommodation indorser. In other words, this section makes an accommodation indorser a ·comaker, as between such indorser and payee, as well as any other holder, and, as contended by appellant, the act, in that respect, is merely declaratory of the common law as expounded by this court in several decisions, among which are *Clopton* v. *Hall*, 51 Miss. 482; *Thompson* v. *Jennings*, 5 Smedes & M. 630; *Polkinghorne* v. *Hendricks*, 61 Miss. 371; *Pearl* v. *Cortright*, 81 Miss. 300, 33 So. 72; *Lindsay* v. *Parrot*, 108 Miss. 161, 66 So. 412. But the court in none of those cases was dealing with the question of the application of section 3731, Code of 1906 (section 2907, Hemingway's Code).

We will consider, first, the question whether section 3731, Code of 1906 (section 2907, Hemingway's Code), was necessarily repealed by the Negotiable Instruments Act. To sustain its position that there was such a repeal, appellant relies largely on *Bank* v. *Stary*, 51 N. D. 399, 200 N. W. 505, 37 A. L. R. 1186. We find, on examination, that case to be directly in point, and that it sustains appellant's contention, but we do not agree with the North Dakota court. We do not think its reasoning is sound. That was an action by the holder of a negotiable note against a known accommodation indorser, and so was the action in the present case. The defendant made defense on the ground that the plaintiff had failed to proceed against the accommodated maker of the note at a time when the latter was solvent, although the accommodation indorser had requested him to do so, and that the accommodated maker had since become insolvent. A statute of North Dakota gave this

right to accommodation indorsers, and discharged them to the extent of the prejudice they suffered by failure of the holder to proceed by action. In deciding the question, the majority of the court took the position that the liability of an accommodation indorser was fixed by sections 29, 64, and 120 of the Negotiable Instruments Act, which are corresponding sections to sections 2607, 2642, 2698, Hemingway's Code, and held that an accommodation indorser became absolutely liable, and was not a surety under the laws of North Dakota; that the law merchant, in section 196 of the Negotiable Instruments Act, corresponding to section 2774, Hemingway's Code, did not include the common-law doctrines of suretyship. The court emphasized a clause in the note by the terms of which an accommodation indorser waived demand and notice, and consented to any extension of time of payment or renewal. One judge dissented, contending that ordinary suretyship defenses were not abrogated by the Negotiable Instruments Act. A note on this decision in 38 Harv. L. Rev. 954, criticises adversely the argument used by the majority opinion, excluding suretyship defenses under the Negotiable Instruments Act; the writer of the note taking the position that suretyship principles are part of the law merchant. We think the decisions of the supreme court of Oklahoma and Missouri holding contrary to the supreme court of North Dakota, in the Stary case, are better reasoned cases. Section 1058, Revised Laws of Oklahoma 1910, provided that a surety may require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety could not himself pursue, and which would lighten the burden of the surety; and, if the creditor neglect so to do, the surety should be exonerated to the extent he was thereby prejudiced. The supreme court of Oklahoma held, in construing that statute, that the statute was not in conflict with the provisions of the Negotiable Instruments Act, but was an enlargement of the grounds for discharge enumerated in sections 119 and

120 of the act, corresponding to sections 2697 and 2698, Hemingway's Code. *Bank* v. *Lowrey,* 57 Okl. 304, 157 P. 103. There was a Missouri statute similar to that of Oklahoma, in construing which the supreme court of Missouri held that an accommodation indorser, although primarily liable as between himself and the payee, was a surety in respect to the principal maker, and that his statutory right was not destroyed by the provisions in the instrument that the signers consented to an extension of time without notice. There will be found in Brannon's Negotiable Instruments Laws (Ann. 4th Ed.), pp. 720, 726, 758, and 767, a discussion of this question and kindred questions arising under sections 119 and 120 of the act, corresponding to sections 2697 and 2698, Hemingway's Code. The author says, among other things, the following:

"So far as concerns the questions involved in sections 119, 120, there is no longer any hope of uniformity. Not only have several states made changes in these sections before adopting the act, but in Iowa it has been held that under section 58 [Code Supp. 1907, section 3060a58], providing that 'in the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable,' a maker, known to the payee to be a surety, was discharged by an extension given to the principal maker without the consent of the surety; the court considering the provisions of sections 119 and 120 as applicable only to holders in due course. . . .

"The confusion and ambiguities caused by these sections in attempting to deal with some cases of suretyship and omitting others, have been pointed out by Prof. Hening, and also by Prof. Greeley. The confusion is much increased by the absence of any definition in the act of the words 'principal debtor,' which are used both in section 119 and section 120. These words may mean either a party primarily liable or a party who, as between himself and another party or parties to the instru-

ment, ought to pay it. And it is not always clear in which sense they are used in these sections. Prof. Hening argues that sections 120 and 192 should be totally repealed because, unless all defenses of the surety are codified, none should be, and that all cannot be successfully codified owing to the diversity of the suretyship rules under both the decisions and the statutes of the different states. It would seem, however, that it is advisable, in an act dealing with negotiable instruments, to have some provision dealing with the modes of legal discharge of the instrument and of a party or parties, leaving the instrument otherwise still in force.''

We are of opinion that section 3731, Code of 1906 (section 2907, Hemingway's Code), lays down a just and wholesome principle governing the rights and obligations between accommodation indorsers and other sureties on the one hand, and creditors on the other; and the statute ought to be preserved unless it conflicts with the provisions of the Negotiable Instruments Act. We do not think it conflicts with that act, but, on the contrary, fits into the act and improves it, instead of marring it.

It is argued, however, by appellant, that, conceding that statute was not repealed by the Negotiable Instruments Act, under the stipulation over appellee's signature on the back of the note, by the provisions of which the appellee waived protest and agreed that the time of payment of the note might be extended without notice to him, in connection with the stipulation on the face of the note waiving presentment for payment, notice of nonpayment, protest, and failure or want of consideration, appellee consented to appellant's indulgence of the Long Beach Canning Company, the principal debtor, and thereby waived the right the above statute gave him to require appellant to pursue the canning company in the courts. The facts were that appellant did not make a contract with the canning company extending the time of payment of the note for any definite period. Appellant simply neglected to bring an action on the note

against the canning company. There was no binding contract or agreement between appellant and the canning company with reference to the indulgence or extension of time. No consideration passed from the canning company to the appellant for the delay in suing. In order to constitute a valid binding contract for extending time of payment of a note, such extension of time must be for a definite period, and a valuable consideration therefor is essential. The mere granting to the maker indulgence is not an extension of time of payment. *Bank* v. *Graham*, 246 Pa. 256, 92 A. 198; *Bank* v. *Breeden*, 130 Tenn. 465, 171 S. W. 86, L. R. A. 1915C, 831; *Bank* v. *Farmers' Exchange*, 120 Va. 771, 92 S. E. 918; *Williams* v. *Grocery Co.*, 73 Fla. 937, 75 So. 517; *Parker* v. *Guillot*, 118 La. 223, 42 So. 782; *Nalitzky* v. *Williams*, 237 F. 802, 151 C. C. A. 44; *Bank* v. *Douglass*, 178 Mo. App. 664, 161 S. W. 601. Section 120 of the Negotiable Instruments Act (section 2698, Hemingway's Code), in subsection 6, provides that a person secondarily liable on an instrument may be discharged by agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, "unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved." Clearly, under the law, there was no binding agreement between appellant and the canning company to postpone time of payment, or to postpone appellant's right to enforce payment, because, as stated, there was only an indulgence by appellant of the canning company for which appellant received no consideration. It is true that appellee assented to the stipulation appearing over his signature on the back of the note, that appellant might extend the time of payment of the note without notice to appellee, but, as shown, that was not done. If it had been done, appellee could not have availed himself of section 3731, Code of 1906 (section 2907, Hemingway's Code), during the period for which the time had been extended. But appellee

could have availed himself of the statute, as he did, during the period of mere indulgence of the canning company on the part of the appellant, because such indulgence was based on no binding agreement between the appellant and the canning company that would have prevented appellant from suing, at any time, during such period of indulgence.

*Affirmed.*